Milligan, J.,
delivered tbe opinion of tbe court:
This is a claim for fourteen bales of cotton, which it is alleged were seized at Charleston, when tbe city was captured in 1865. Tbe claimant avers that be is a citizen of tbe Kingdom of Hanover, and that be took no part in tbe rebellion, or gave aid or comfort thereto.
Preliminary to tbe consideration of tbe merits of this case, tbe special counsel for tbe United States moves to suppress tbe depositions of John L, Fenwick and James "Wiley. Tbe ground of this motion is, that these witnesses, respectively, testify that they sold tbe cotton in question to the claimant, and therefore their depositions are excluded by tbe provisions of tbe act of tbe 25th of June, 1868.
This motion was submitted in another case, on a former day of this term, and overruled by this court. We have no dispo *531 sition. to elaborate or change that opinion, but re-affirm it as ruling’ the present. (See Qrossmayer’s Case, p. 1, ante.)
The petition appears to have been filed on the 28th of March, 1868, to which, among other defenses, the plea of the stathte of limitations is interposed. No new ground is assumed in its support, and it must be governed by the case of Henry Gross-may er v. The United States, decided at this term.
The principal defense is set up and relied on under the plea of alienage, and the irregularity of the claimant’s naturalization papers.
In the petition it is admitted that the claimant is a citizen of the Kingdom of Hanover; but the record shows that on the 28th of October, 1865, he filed his application, under the act of 1802, (2 Stat. L., p. 155, § 3,) in the Circuit Court in Charleston, South Carolina, declaring his intention to become a citizen of the United States; and on the 29th of October, 1868, he was formally admitted, by the “ City Court of Charleston,” in the State of South Carolina, to all the rights and privileges of a citizen of the United States.
• The first objection to the regularity of the claimant’s naturalization papers is founded on the fact that in the caption of the claimant’s petition his name appears to have been written “ Frederieh M. Scharfer,” when it appears in his naturalization papers as “ Frederick SclmrferP There is nothing in this objection. The identity of the claimant is sufficiently established, by the fact that he signs the jurat of his petition by the same name employed in his naturalization papers. The name in the caption of the petition was inserted by his counsel, and is evidently a mistake, as it appears nowhere else with a middle letter in the record when used by claimant in person.
It is nest insisted that “the City Court of Charleston” is not shown to be a court of common law jurisdiction, nor to have a seal, a clerk or prothonotary, and therefore, under the act of 1802, it has no jurisdiction to enroll citizens of foreign birth as citizens of the United States.
We are satisfied that there is no want of jurisdiction in this tribunal to grant papers of naturalization; .and the record itself shows that it has a clerk, and an office seal, which under the-act of Congress completes its jurisdiction for all the purposes of naturalization.
These questions out of the way, it is further argued that this *532 action cannot be maintained, unless tbe claimant brings himself under tbe provisions of tbe act of Congress approved tbe 27tb of July, 1868, (15 Stat. L., p. 243.)
■ It will be observed that tbe petition was filed after tbe claimant bad made bis application for naturalization, but before it was granted. No disability rested on bim to institute tbis action when it was originally brought. Tbe disability is purely statutory, and imposed by tbe act of tbe 27th of July, 1868, which by its terms requires tbe defendauts to plead it; and if tbe plea is established by proof tbe action is flatly barred. Tbe passage of tbe act did not ipso facto work tbe dismissal of tbe action. Tbe claimant was lawfully in court, and entitled by tbe act itself to a fair trial of tbe truth of tbe defendant’s plea. He now answers it by establishing tbe fact that be was regularly naturalized by a court of competent jurisdiction before tbe plea of alienage was filed, and we have no hesitation, under tbe policy of tbis government, in bolding that tbis action can be maintained.
Tbe loyalty of tbe claimant, we think, is fully proven within tbe established rulings of tbis court; and it only remains to ascertain tbe number of bales of cotton owned by tbe claimant, and that they were seized by tbe United States, sold, and tbe proceeds paid into tbe Treasury.
On tbis point we find that claimant purchased, on the 10th of October, 1864, three bales and three packages of cotton from J. L. Fenwick; and on tbe 26th of January, 1865, eight bales from James Wiley. Tbe cotton was purchased in tbe regular course of tbe claimant’s business, and paid for at tbe time. Tbe three packages appear, from tbe number of pounds given in each, to be about equal to two bales. We therefore find that be was tbe lawful owner of thirteen bales of cotton, which were seized by tbe United States, and proceeds of tbe sale regularly paid into tbe Treasury.
Judgment will be entered in favor of tbe claimant for $1,705 60.